739 So.2d 553 (1999)
David YOUNG, Appellant,
v.
STATE of Florida, Appellee.
No. 90,207.
Supreme Court of Florida.
June 10, 1999.
Rehearings Denied September 15, 1999.
Todd G. Scher, Chief Assistant CCRC of the Capital Collateral Regional Counsel for the Southern Region, Miami, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Sara D. Baggett, Assistant Attorney General, West Palm Beach, Florida, for Appellee.
PER CURIAM.
David Young appeals an order entered by the trial court in which the trial judge *554 denied Young's motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We conclude that we must reverse the trial court's order because the trial court erred in limiting the scope of a postconviction evidentiary hearing so as to exclude review of exculpatory evidence that should have been disclosed pretrial pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Because of the substance of the Brady information, which is undisputed, we remand for a new sentencing proceeding before a jury.

FACTS
The facts of this case are provided fully in our opinion on direct appeal. Young v. State, 579 So.2d 721 (Fla.1991). Young was indicted for the first-degree shotgun murder on August 31, 1986, of Clarence John Bell in Palm Beach County. Young's theory of defense at trial was self-defense, but trial testimony conflicted as to whether Young or Bell shot first. Three of the victim's neighbors testified that they were familiar with firearms and that the first and last shots came from a shotgun with pistol shots in between. Trooper Michael Brinker,[1] an off-duty state trooper working nearby as a security guard, also testified that shotgun blasts preceded and followed the pistol shots. Two of Young's companions testified that Bell shot first. The jury convicted Young as charged and, by a vote of ten to two, recommended a death sentence for the crime. After finding four aggravating circumstances[2] and little in mitigation,[3] the trial judge sentenced Young to death. In his sentencing order, the trial judge expressly relied upon Trooper Brinker's being "sure that the first shot fired was that of the blast of the short barreled shotgun" in finding the avoid-arrest aggravator.

PROCEDURAL HISTORY
On direct appeal, this Court found sufficient evidence for both premeditated and felony murder, struck the CCP aggravating circumstance, found harmless error in the trial court's CCP finding, and affirmed Young's conviction and sentence. Young, 579 So.2d at 724-25. In his postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850, originally filed on May 13, 1993, and later amended, Young challenged his conviction and sentence on a variety of grounds. Following submission of proposed orders by both parties, the trial judge, in a written order dated December 27, 1996, summarily denied all claims except the claim alleging that trial counsel was ineffective during the guilt phase in failing to call two witnesses, Larry Hessemer and Elizabeth Painter, both of whom were neighbors of the victim and allegedly would have supported Young's theory of self-defense. Although the order denied Young's claim that the State failed to disclose certain documents asserted to be Brady material on the basis of materiality as to the conviction, the order was essentially silent regarding materiality as to the sentence. The court strictly limited the order for evidentiary hearing to defendant's claim of ineffective assistance of trial counsel in failing to present the two witnesses to support his self-defense claim.
An evidentiary hearing was held January 22, 1997, in which the court heard testimony from Hessemer, Painter, and Young's trial counsel. The trial judge filed a written order on January 27, 1997, finding that appellant failed to prove prejudice under Strickland v. Washington, 466 U.S. *555 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and materiality under Brady and denying relief on all claims. State v. Young, No. 86-8682-CF (Fla. 15th Cir. order filed Jan. 27, 1997). The trial judge found that testimony of Hessemer and Painter concerning self-defense would have had no significant impact on the outcome of the case because this Court held in the decision on direct appeal that the evidence was sufficient to support a felony murder conviction. Id. The judge reasoned that the testimony of the two witnesses was irrelevant because self-defense is not available as to a felony murder.[4]Id.
In this Court, Young appeals the trial court's postconviction orders, raising twelve claims, eleven of which are procedurally barred,[5] meritless,[6] or moot in light of this opinion.[7]

BRADY VIOLATION
Young's fifth claim in this appeal concerns the dispositive issue as to whether the trial court erroneously excluded a consideration of Brady claims by limiting the postconviction evidentiary hearing to Young's claim that his trial attorney was ineffective for failing to call two witnesses to support his theory of self-defense at trial.[8] Young asserts within this claim that the court erred in denying Young an expanded postconviction evidentiary hearing to consider whether, under Brady, the State unlawfully withheld the following exculpatory materials: state attorney notes concerning witness Brinker's initial interview as to his hearing gunshots at the time of the murder; state attorney notes concerning a statement by a Dr. Roth concerning his hearing gunshots at the time of the murder; state attorney notes regarding an initial interview with witness Hessemer; and state attorney notes regarding interviews with State witnesses at a firearms shooting range. Young also contends that the court erred in finding that state attorney notes concerning witness *556 Brinker's initial interview and the interviews with State witnesses at the firing range were not Brady material. Young argues that a reasonable probability exists that the outcome of the trial would have been different if this information had been provided to the judge and the jury.
The state attorney's witness information became an issue after Young learned during postconviction public records proceedings that the State did not disclose during pretrial discovery certain notes concerning interviews with key witnesses. In his brief in this appeal, Young presents the following quotation of a note that was part of the material the state attorney's office disclosed pursuant to Young's postconviction records request:
Bolster Trooper Brinker
arms expert
when he heard the noises, he was 1 block away + detached, because he didn't know if it was gunshots or fireworks.
Young also includes in his brief the following quotation of a state attorney note regarding Dr. Roth's pretrial statement:

Dr. Rothdon't need.
heard firecrackers, then 2 more bangs. thought all the shots were firecrackers. not a good W.
In his brief, Young also paraphrases a portion of a previously undisclosed state attorney note revealing that "law enforcement officers and/or prosecutors" took or planned to take prosecution witnesses, all of whom testified as to their perceptions of the order of the gunshots, to a "range" for an unspecified purpose. Young states that the same set of notes indicates that witnesses expected to testify favorably to the defense concerning the order of gunshots were not to be taken to the range.
Finally, Young presents a quotation from a previously undisclosed state attorney note demonstrating that a Larry Hessemer described events surrounding the murder as follows: "tone + what V said, W could understand that the kids would be scared to death.... John Bell initiated it."
The State does not dispute the existence or contents of any of these documents.
We begin our analysis of this issue with the following portions of the United States Supreme Court's majority opinion in Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), which does not announce new rules[9] but describes various existing rules that must be applied to Brady material. First, Kyles expressly summarizes the State's disclosure obligation:
In United States v. Agurs, however, it became clear that a defendant's failure to request favorable evidence did not leave the Government free of all obligation. There, the Court distinguished three situations in which a Brady claim might arise: first, where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured; second, where the Government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence; and third, where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way. The Court found a duty on the part of the Government even in this last situation, though only when suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial."
In the third prominent case on the way to current Brady law, United States *557 v. Bagley, the Court disavowed any difference between exculpatory and impeachment evidence for Brady purposes, and it abandoned the distinction between the second and third Agurs circumstances, i.e., the "specific-request" and "general- or no-request" situations. Bagley held that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (opinion of Blackmun, J.) (White, J., concurring in part and concurring in judgment).
Kyles, 514 U.S. at 433-34, 115 S.Ct. 1555 (citations and footnotes omitted) (emphasis added).
Next, Kyles enunciates the Bagley[10] materiality issue in respect to Brady information:

Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." Bagley, 473 U.S., at 678[, 105 S.Ct. 3375].
The second aspect of Bagley materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
Third, we note that, contrary to the assumption made by the Court of Appeals, once a reviewing court applying Bagley has found constitutional error there is no need for further harmless-error review. Assuming, arguendo, that a harmless-error enquiry were to apply, a Bagley error could not be treated as harmless, since "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," (opinion of Blackmun, J.) (White, J., concurring in part and concurring in judgment), necessarily entails the conclusion that the suppression must have had "`substantial and injurious effect or influence in determining the jury's verdict,'" Brecht v. Abrahamson. This is amply confirmed by the development of the respective governing standards. Although Chapman v. California held that a conviction tainted by constitutional error must be set aside unless the error complained of "was harmless beyond a reasonable doubt," we held in Brecht that the standard of harmlessness generally to be applied in habeas cases is the Kotteakos formulation (previously applicable only in reviewing nonconstitutional errors on direct appeal). Under Kotteakos a conviction may be set aside only if the error "had substantial and injurious effect or influence in determining the jury's verdict." Agurs, however, had previously rejected Kotteakos as the standard governing constitutional disclosure claims, reasoning that "the constitutional standard of materiality must impose a higher burden on the defendant." Agurs thus opted for its formulation of materiality, later adopted as the test for prejudice *558 in Strickland, only after expressly noting that this standard would recognize reversible constitutional error only when the harm to the defendant was greater than the harm sufficient for reversal under Kotteakos. In sum, once there has been Bagley error as claimed in this case, it cannot subsequently be found harmless under Brecht.

The fourth and final aspect of Bagley materiality to be stressed here is its definition in terms of suppressed evidence considered collectively, not item-by-item.
Kyles, 514 U.S. at 434-36, 115 S.Ct. 1555 (citations and footnotes omitted) (emphasis added).
As to the scope of the prosecutor's responsibility, Kyles states:
On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a Brady violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.
Kyles, 514 U.S. at 437-38, 115 S.Ct. 1555 (citations omitted) (emphasis added).
Applying these rules in Kyles, the United States Supreme Court found that Brady documents that had to be disclosed included an internal police memorandum, the state attorney notes of his interview with a key person in the factual scenario of the case, and the prosecution's list of cars in a parking lot at mid-evening after the murder. Kyles, 514 U.S. at 446-50, 115 S.Ct. 1555.
We applied these rules in Jones v. State, 709 So.2d 512, 519 (Fla.1998), in which we stated:
We recently reiterated the four elements a defendant must prove in order to obtain reversal based on Brady:

(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

Robinson v. State, 707 So.2d 688, 693 (Fla.1998) (quoting Hegwood v. State, 575 So.2d 170, 172 (Fla.1991)).
We have expressly recognized that the State is obligated to disclose to a defendant all exculpatory evidence in its possession. Johnson v. Butterworth, 707 So.2d 334, 335 (Fla.1998); see Brady, 373 U.S. at 87-88, 83 S.Ct. 1194.[11]
*559 In Florida, defendants have the right to pretrial discovery under our Rules of Criminal Procedure, and thus there is an obligation upon the defendant to exercise due diligence pretrial to obtain information. However, we have also recognized, as again made clear by the quoted portions of the United States Supreme Court in Kyles, that the focus in postconviction Brady-Bagley analysis is ultimately the nature and weight of undisclosed information. The ultimate test in backward-looking postconviction analysis is whether information which the State possessed and did not reveal to the defendant and which information was thereby unavailable to the defendant for trial, is of such a nature and weight that confidence in the outcome of the trial is undermined to the extent that there is a reasonable probability that had the information been disclosed to the defendant, the result of the proceeding would have been different.
Young argues that the state attorney notes as to Trooper Brinker, Dr. Roth, Hessemer, and concerning the visit to the shooting range are Brady material under Kyles because the notes cast reasonable doubt as to the strength of key state eyewitnesses. In its initial order denying postconviction relief, the trial court stated:
Defendant alleges that the State failed to disclose its impression of Trooper Brinker's strength as a witness as reflected in the prosecutor's personal interview notes, and the prosecutor's specific preparations for trial, including its purpose for interviewing witnesses at the "range." This Court finds, however, that such information does not constitute the type of evidence envisioned by Brady. Even if it does, Defendant has failed to show that, even had such information been disclosed to the defense, the verdict would have, within a reasonable probability, been different.
State v. Young, No. 86-8682-CF, order at 9 (Fla. 15th Cir. Ct. order filed Dec. 27, 1996).
The State argues that the notes fit the definition of attorney work product and thus were exempt from pretrial discovery under Florida Rule of Criminal Procedure 3.220(g)(1).[12] We reject the State's argument. First, we again make plain that the obligation exists even if such a document is work product or exempt from the public records law. Johnson, 707 So.2d at 335; Walton v. Dugger, 634 So.2d 1059 (Fla.1993). Second, we find that the trial court's decision that the state attorney notes of witness interviews were not Brady material was error.
At trial, witness Brinker testified during the following colloquy with the prosecutor:
Q. How would you make a comparison towards a .38 revolver or a sawed-off shotgun with the sound you heard?
A. It would be a sawed-off shotgun.
Q. Is there any doubt in your mind whatsoever?
A. No, sir. No comparison at all to the two.
Q. After you heard the shotgun, or the sound you believed to be a shotgun, what next did you hear?
A. I put my book down, it was a few seconds. And I heard two rapid-fired, a lot quieter, shorter snappier rounds which would sound like a pistol.
Q. Pistol or .38 revolver?
A. Yes sir.
. . . .
Q. Are you 100 percent certain?
[Objection. Overruled.]
Q. Is there any doubt in your mind as to the sound of that .38?
A. No, sir.
The state attorney notes of the interview with Trooper Brinker were precisely the *560 kind of material found to be Brady material in Kyles. The undisclosed notes, which show Trooper Brinker's initial uncertainty as to whether the shotgun was fired first, would have provided impeachment to Brinker's above-quoted testimony. In the absence of the disclosure of the prosecutor's notes, Young's counsel was able to establish on cross-examination only that Brinker was 400 yards away from the scene of the murder, and the prosecution was able to highlight Brinker as a star witness in its closing argument by arguing that Brinker had an "unshakable" memory of the events. Furthermore, the certainty that Brinker demonstrated during his testimony led the trial court to state in its death-sentence order: "[Brinker] was sure that the first shot fired was that of the blast of the short barreled shotgun." State v. Young, No. 86-8682, order at 5 (Fla. 15th Cir. Ct. order filed Feb. 16, 1988) (emphasis added).
As to the prosecution's previously withheld notes concerning Dr. Roth and the police interview with witness Larry Hessemer, a neighbor who was awakened by noise from the incident, we find that the prosecution's failure to disclose these documents was a failure to disclose information that could have corroborated defense witnesses and thus could have been favorable evidence for the defense. We likewise agree that the alleged state attorney notes as to taking witnesses to the "range" would have been favorable to the defense claim that the victim fired first.
The issue that remains in respect to these undisclosed documents is their materiality pursuant to Bagley, which was explained in Kyles as follows:
Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."
Kyles, 514 U.S. at 434, 115 S.Ct. 1555. We conclude that the documents were not material in this regard as to Young's conviction but were material as to the sentence of death.
Concerning the conviction, Young argues that the documents were material to his defense of self-defense. While Young is correct that the documents were material to the defense of self-defense as to the charge of premeditated murder, Young also was charged with and convicted of felony murder. In his direct appeal, we upheld Young's conviction of burglary and specifically upheld Young's conviction for felony murder. Young, 579 So.2d at 724. We have held that "self-defense is legally unavailable to a person who `[i]s attempting to commit, committing, or escaping from the commission of a forcible felony.'" Marshall v. State, 604 So.2d 799, 803 (Fla.1992). Section 776.08, Florida Statutes (1985), specifically defines "forcible felony" as including both burglary and aggravated battery. Therefore, we conclude that self-defense was not available as to Young's conviction for felony murder, and these documents were not material to Young's conviction of felony murder.
In respect to the sentence of death, we find that the information was material. The aggravators of CCP and avoiding or preventing lawful arrest, which the jury was instructed to consider, were found based upon testimony as to which gun was fired first. The trial court, in sentencing Young to death, found the existence of the aggravators of avoid arrest and CCP. On direct appeal, we struck the CCP aggravator and upheld the avoid arrest aggravator. This latter aggravator was expressly grounded in the trial court's sentencing order on Trooper Brinker's being "sure that the first shot fired was that of the *561 blast of the short barrelled shotgun." State v. Young, order at 5 (15th Cir. Ct. order filed Feb. 16, 1988). In this Court's opinion in Young's direct appeal, we specifically referred to Brinker's testimony by stating that "[a]n off-duty state trooper working nearby as a security guard also testified that shotgun blasts preceded and followed the pistol shots." Young, 579 So.2d at 723. Therefore, the summary of Trooper Brinker's initial statement, read cumulatively with other documents concerning questions about the order of shots fired, is material to Young's sentencing within the meaning of materiality as we have set forth. Accordingly, we reverse the trial court's order denying the postconviction motion as to the sentence of death.

CONCLUSION
Since the State does not dispute the existence and contents of documents that are the subject of Young's allegations, we find no need to order an evidentiary hearing. Rather, we vacate the sentence of death and order a complete new penalty phase proceeding before a jury.
It is so ordered.
HARDING, C.J., SHAW, WELLS, ANSTEAD and PARIENTE, JJ., and OVERTON and KOGAN, Senior Justices, concur.
NOTES
[1] This witness is identified in the trial transcript as Trooper Michael Bricker and in the trial court's postconviction order as both Bricker and Brinker. Appellant's brief in this appeal identifies him throughout as Brinker.
[2] The trial court found that the murder was (1) committed during a burglary/for pecuniary gain (merged); (2) committed to avoid or prevent arrest; and (3) committed in a cold, calculated, and premeditated manner (CCP).
[3] The trial court found as nonstatutory mitigation that Young had participated in church activities and that he was able to conform to prison rules and regulations.
[4] The jury returned a general guilty verdict for first-degree murder. On direct appeal, this Court held that the evidence was sufficient to prove both premeditated and felony murder and that "a special verdict form demonstrating which theory the jury based its verdict on is not required." Young, 579 So.2d at 724.
[5] The following claims were barred because they either were or could have been raised on direct appeal: (1) that the trial court erred in refusing to order an evidentiary hearing regarding jury selection; (2) that the evidence was insufficient to support the conviction of first-degree murder; (3) that Florida Bar Rule of Professional Conduct, forbidding juror interviews, is unconstitutional; (4) that the trial court's instruction improperly shifted the burden to the appellant to prove he should receive a life sentence; and (5) that the trial court erred in imposing a disproportionate death sentence.
[6] We find no merit in Young's claims that the trial court erred by engaging in ex parte communication and in failing to strike the State's answer and procedural defenses after a continuance.
[7] In respect to Young's convictions, we find that claim one as to preparation of the order denying relief and claim three as to public records are legally insufficient in view of the conviction for felony murder. Marshall v. State, 604 So.2d 799, 803 (Fla.1992). In light of this opinion ordering a new sentencing proceeding, we find to be moot Young's claims that the trial court erred, with respect to penalty phase issues, in adopting the State's proposed order denying postconviction relief; in denying motions regarding Young's postconviction public records requests; and in denying Young's rule 3.850 motion without ordering an evidentiary hearing on counsel's ineffectiveness during the penalty phase. Young's final claim, that this Court erred in applying a harmless error analysis to its striking of the CCP aggravator, was properly denied because the trial court has no authority to review actions of this Court.
[8] Young contends within this claim that the court erred in failing to hold an evidentiary hearing on the alleged ineffective assistance of counsel in failing to present during the penalty phase mitigating evidence including victim character evidence to support Young's self-defense theory. In light of our order for a new sentencing proceeding based on the trial court's error in failing to consider Brady allegations, we decline to address the ineffective assistance claims.
[9] See Neelley v. Nagle, 138 F.3d 917 (11th Cir.1998), in which the Eleventh Circuit Court of Appeals stated that "[a]lthough Kyles was decided in 1995, eight years after the Alabama court's denial of Neelley's petition for collateral relief, the Kyles Court characterized its opinion as a mere explanation of the rule already set forth in Bagley. In fact, this court has stated that Kyles did not announce a new rule." Id. at 927 n. 10. (citation omitted).
[10] United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
[11] We take this opportunity to caution counsel for both the State and defendants. In respect to the State, we call attention to the following admonition, which the majority of the United States Supreme Court made after setting out the four aspects of Bagley materiality: "We have never held that the Constitution demands an open file policy (however such a policy might work out in practice)...." Kyles, 514 U.S. at 437, 115 S.Ct. 1555 (emphasis added). This means "the prudent prosecutor will resolve doubtful questions in favor of disclosure." Id. at 439, 115 S.Ct. 1555 (quoting Agurs, 427 U.S. at 108, 96 S.Ct. 2392). In respect to defendants, this should not be read as lessening the requirement of due diligence because information which is available to the defendant through the exercise of due diligence is not a basis for postconviction relief even if undisclosed by the State unless it meets the exacting Bagley materiality standards.
[12] Florida Rule of Criminal Procedure 3.220(g)(1) provides an exemption to a prosecutor's discovery obligation for "legal research... records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the prosecuting or defense attorney or members of their legal staffs."