PER CURIAM.
 

 This case is before the Court on appeal from an order denying appellant Lloyd Duest’s motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. For the reasons stated in this opinion, we affirm the denial of postconviction relief.
 
 [1]
 

 FACTS AND PROCEDURAL HISTORY
 

 Appellant, Lloyd Duest, was convicted of first-degree murder and sentenced to death for the killing of John Pope. On direct appeal, this Court set forth the following relevant facts:
 

 On February 15, 1982, defendant was seen by witnesses carrying a knife in the waistband of his pants. Subsequently, he told a witness that he was going to a gay bar to “roll a fag.” Defendant was later seen at a predominantly gay bar with John Pope, the victim. The two of them then left the bar in Pope’s gold Camaro. Several hours later, Pope’s roommate returned home and found the house unlocked, the lights on, the stereo on loud, and blood on the bed. The sheriff was contacted. Upon arrival, the deputy sheriff found Pope on the bathroom floor in a pool of blood with multiple stab wounds. Defendant was found and arrested on April 18,1982.
 

 Duest v. State,
 
 462 So.2d 446, 448 (Fla. 1985). The conviction and sentence were affirmed on appeal.
 
 Id.
 
 Subsequently, Duest’s sentence was vacated because of the reversal of his Massachusetts felony conviction, which conviction had been introduced into evidence in the penalty phase.
 
 [2]
 
 At resentencing, the jury recommended death by a ten-to-two vote. The trial court followed the jury’s recommendation and sentenced Duest to death.
 
 [3]
 
 The sentence was affirmed by this Court
 
 *738
 
 on direct appeal.
 
 See Duest,
 
 855 So.2d at 49.
 
 [4]
 

 Duest then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, raising five claims.
 
 [5]
 
 Following a case management conference, the trial court summarily denied all of Duest’s claims except the portion of Claim III relating to the medical examiner’s changed testimony at Duest’s resentencing.
 

 At the evidentiary hearing, Duest presented only the testimony of Carlos Lló-rente, counsel from his resentencing, who testified about his cross-examination and impeachment of the medical examiner at the resentencing. The State presented no witnesses in rebuttal. After the evidentia-ry hearing, the trial court issued its order denying relief. Duest appeals, raising two issues, including numerous subissues, for
 
 *739
 
 this Court’s review.
 
 [6]
 

 ANALYSIS
 

 Claims Denied After an Evidentiary Hearing
 

 Dr. Wright’s Testimony
 

 Duest’s first claim of error involves the deposition and testimony of Dr. Ronald Wright, the medical examiner who conducted the autopsy of Mr. Pope. Duest attacks both his original conviction for first-degree murder and death sentence on the basis of his claim that the change in testimony constitutes newly discovered evidence, that counsel rendered deficient performance when confronted with the change in Dr. Wright’s testimony, and that the State suppressed evidence of the changed testimony.
 

 By way of background, before affirming the sentence on direct appeal from Duest’s second penalty phase, this Court denied Duest’s 2001 motion to relinquish jurisdiction to the trial court to consider a change in Dr. Wright’s testimony. This request arose because in Dr. Wright’s original deposition taken in 1983, he estimated that the time of death occurred ten to fifteen seconds to no more than five minutes after the victim suffered a stab wound to the right side of his heart.
 
 [7]
 
 At Duest’s initial trial in 1983, Dr. Wright testified that Mr. Pope died of multiple stab wounds, but did not specify the length of the time lapse between Mr. Pope’s attack and his death. However, at the 1998 resentencing, Dr. Wright testified that loss of consciousness would occur fifteen to twenty minutes after the blows and death after another five to ten minutes. Dr. Wright also stated at the resentencing that the victim could have survived if he had called for help immediately but did not do so, opining that Mr. Pope was attempting to conceal his homosexual lifestyle. During the cross-examination of Dr. Wright at the resentencing, defense counsel questioned Dr. Wright about his opinion concerning how the victim was wounded and the amount of time that passed before death occurred. Once Dr. Wright revealed that he estimated death to have occurred within fifteen to twenty minutes, counsel impeached him with his deposition from 1983 in which he testified that the victim died within five minutes.
 

 In affirming Duest’s sentence on direct appeal from the resentencing, this Court
 
 *740
 
 declined to address his
 
 Brady
 
 claim seeking a new guilt-phase trial based on the changed testimony, but stated that Duest was not precluded from raising this claim in a postconviction motion.
 
 Duest,
 
 855 So.2d at 39. Specifically, this Court stated:
 

 Duest asserts that the testimony in the new penalty phase by medical examiner Dr. Ronald Wright as to the manner of the victim’s death constitutes material, exculpatory evidence unlawfully withheld by the State.... Duest claims that this change in testimony shows that the assailant left the victim alive and therefore calls into question the intent to kill, requiring a new trial on his guilt of first-degree murder.
 

 We conclude that Duest’s challenge to the murder conviction, which became final in 1985, is not properly before this Court in an appeal from the reimposition of a death sentence after the previous death sentence was vacated. Duest did not object to the testimony below, instead impeaching Dr. Wright on his change in testimony from 1983 to 1998. Nor has Duest filed a motion for post-conviction relief asserting that the change in testimony constitutes either undisclosed exculpatory evidence or newly discovered evidence entitling him to a new trial. The absence of a pending motion for postconviction relief distinguishes this case from
 
 Way v. State,
 
 630 So.2d 177 (Fla.1993), in which this Court reversed the summary denial of a motion for postconviction relief raising a
 
 Brady
 
 claim and withheld ruling on the direct appeal from resentencing pending disposition of the postconviction motion.
 
 Id.
 
 at 179. In recognition of Duest’s efforts to raise this issue during
 
 the
 
 direct appeal, our affirmance is without prejudice to Duest raising the issue in the trial court via Florida Rule of Criminal Procedure 3.851 after this appeal.
 

 Duest,
 
 855 So.2d at 39-40 (footnote omitted).
 

 Duest filed a 3.851 motion and the trial court granted an evidentiary hearing regarding the change in Dr. Wright’s testimony.
 
 [8]
 
 At the evidentiary hearing, Carlos Llórente, counsel from Duest’s resentenc-ing, testified that it was “obvious” that Dr. Wright’s testimony had changed between the time of the guilt phase and resentenc-ing. Moreover, he testified that he did not receive a discovery notice, memorandum, or other communication from the State notifying him that Dr. Wright had changed his testimony. With this background in mind, we now focus on the issue of whether the change in Dr. Wright’s testimony satisfies the standard for granting a new trial either because it constituted newly discovered evidence under
 
 Jones v. State,
 
 709 So.2d 512 (Fla.1998)
 
 {Jones III),
 
 was prejudicial to Duest under
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), or constituted material evidence under
 
 Brady.
 

 We begin with Duest’s claim that the change in testimony constitutes newly discovered evidence which entitles him to a new guilt phase. To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense eoun-
 
 *741
 
 sel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.
 
 See Jones III,
 
 709 So.2d at 521. Newly discovered evidence satisfies the second prong of the
 
 Jones III
 
 test if it “weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.”
 
 Id.
 
 at 526 (quoting
 
 Jones v. State,
 
 678 So.2d 309, 315 (Fla. 1996)
 
 (Jones
 
 II)).
 

 In determining whether the evidence compels a new trial, the trial court must “consider all newly discovered evidence which would be admissible” and must “evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial.”
 
 Jones v. State,
 
 591 So.2d 911, 916 (Fla.1991).
 
 (Jones I).
 
 This determination includes
 

 whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether the evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
 

 Jones III,
 
 709 So.2d at 521 (citations omitted).
 

 We deny the newly discovered evidence claim because Dr. Wright’s revised testimony does not meet the second prong of
 
 Jones III
 
 in that it is not of such nature that it would probably produce an acquittal on retrial. Although Duest asserts that the changed testimony would have affected the State’s ability to convince the jury that the murder was premeditated, we agree with the trial court’s finding that the “material elements of Dr. Wright’s testimony would have had no impact on [Duest’s] intent to kill.... ” The evidence introduced at trial established that Duest told a witness that he was going to a gay bar to “roll a fag.”
 
 Duest,
 
 462 So.2d at 449. Duest was subsequently seen at a gay bar with the victim and driving with the victim in the victim’s car.
 
 Id.
 
 Later, Duest was seen driving the victim’s car alone.
 
 Id.
 
 Moreover, Duest was seen on the day of the murder with a knife in his waistband and the victim was found to have died from multiple stab wounds.
 
 Id.
 
 The attack was vicious and the wounds life-threatening.
 

 As this Court found on Duest’s direct appeal from his resentencing regarding his assertion that there was a lack of an intent to kill, “there is little or no basis to conclude that after inflicting the multiple wounds, Duest knowingly left Pope alive and with some prospect for survival.”
 
 Duest,
 
 855 So.2d at 47. In addition, we concluded that there was already ample evidence presented at the guilt phase, absent Dr. Wright’s testimony, to support the trial court’s instruction on the CCP aggravator, which requires a finding that “ ‘the defendant exhibited heightened premeditation.’ ”
 
 Id.
 
 at 45 (quoting
 
 Jackson v. State,
 
 648 So.2d 85, 89 (Fla.1994)). Specifically, the instruction on CCP was supported by evidence of Duest’s “prearranged plan to beat up and rob a gay man and Duest’s act of returning to his temporary residence to obtain a knife while in the victim’s company.”
 
 Duest,
 
 855 So.2d at 45. Consistent with our prior conclusion on direct appeal that Dr. Wright’s changed testimony did not negate a finding of the CCP aggravator,
 
 see id.,
 
 we likewise conclude that the testimony has no effect on the premeditated aspect of this murder and is not of such a nature as to probably produce an acquittal on retrial. Because Duest’s claim does not meet the second prong of the newly discovered evidence test the trial court properly rejected the claim.
 

 
 *742
 
 In his next claim of error concerning Dr. Wright’s testimony, Duest asserts that counsel rendered ineffective assistance at his resentencing. The essence of this claim is Duest’s assertion that faced with the changed testimony, counsel should have sought sanctions based on a Richardson
 
 [9]
 
 violation or sought to have the guilt phase reopened. We have already disposed of the second aspect of this claim by concluding that there is no basis to grant a new guilt phase.
 
 [10]
 
 Therefore, we analyze only the first aspect of this claim to determine whether Duest is entitled to a new penalty phase. The trial court ultimately found that counsel had not provided ineffective assistance, a conclusion with which we agree.
 

 The yardstick by which we measure ineffective assistance of counsel claims is the seminal decision of the United States Supreme Court in
 
 Strickland.
 
 First, the defendant must establish that counsel’s performance was deficient. Second, the defendant must establish that counsel’s deficient performance prejudiced the defendant. To establish the deficiency prong under
 
 Strickland,
 
 the defendant must prove that counsel’s performance was unreasonable under “prevailing professional norms.”
 
 Garcia v. State,
 
 949 So.2d 980, 987 (Fla.2006). To establish the prejudice prong under
 
 Strickland,
 
 the defendant must prove that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
 
 White v. State,
 
 964 So.2d 1278, 1285 (Fla. 2007) (quoting
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052).
 

 During the cross-examination of Dr. Wright at the resentencing, counsel questioned Dr. Wright about his opinion on how the victim was wounded and the amount of time that passed before death occurred. Once Dr. Wright revealed that he estimated death to have occurred within fifteen to twenty minutes, counsel impeached him with his deposition
 
 from
 
 1983, where he testified that the victim died within five minutes. During closing argument, counsel relied on Dr. Wright’s testimony that the victim lived up to twenty minutes after the attack and could have survived had he sought help, and argued to the jury that this could be considered a mitigating circumstance. The question before us is whether counsel’s conduct in vigorously cross-examining Dr. Wright instead of pursuing other alternative courses undermines confidence in the outcome of the penalty phase.
 

 Duest argues that counsel should have requested that sanctions be imposed by alleging a discovery violation under
 
 Richardson.
 
 To understand whether trial counsel’s actions were reasonable or whether prejudice can be demonstrated, we review the case law regarding
 
 Richardson.
 
 Once a trial court has notice of an alleged failure to disclose a witness, the trial court is obligated to conduct a
 
 Richardson
 
 inquiry.
 
 See Pagan v. State,
 
 830 So.2d 792, 812 (Fla.2002). The focus of this hearing is to determine “whether the
 
 *743
 
 state’s violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial.”
 
 Richardson,
 
 246 So.2d at 775. Yet, even assuming a
 
 Richardson
 
 hearing had been held and a discovery violation determined to have occurred, we must consider the available sanctions, which could have ranged from providing counsel an opportunity to redepose Dr. Wright to striking Dr. Wright’s testimony to granting a mistrial.
 

 Regarding the option of deposing Dr. Wright, counsel in the penalty phase was fully able to cross-examine the doctor. Notably, counsel did not testify at the evidentiary hearing as to anything else that could have been done to further impeach Dr. Wright if counsel had been provided an opportunity to redepose him during trial. As to the possible sanction of granting a mistrial, there is likewise nothing in the record to show that there would have been any additional or .different testimony presented at a new penalty phase regarding Dr. Wright’s testimony. Lastly, as to the sanction of striking Dr. Wright’s testimony completely, this would be an extreme remedy and there is nothing in this record to show that such a remedy would have been justified.
 
 See McDuffie v. State,
 
 970 So.2d 312, 321 (Fla.2007) (“Florida Rule of Criminal Procedure 3.220(n)(l) authorizes a trial court to exclude evidence as a sanction for a violation of the discovery rules, but this sanction should only be imposed when there is no other remedy.”).
 

 Based on a review of the possible outcomes of the sanctions, even if Duest were to establish that counsel’s failure to request the hearing constituted deficient performance, we find that Duest has not demonstrated prejudice. Importantly, the only aggravator found by the trial court that relied on Dr. Wright’s testimony was HAC, which was also found by the trial court at Duest’s initial sentencing proceeding. As the trial court stated in its denial of this claim:
 

 Dr. Wright’s revised opinions did not alter or cast any reasonable doubt about the facts and evidence that Mr. Pope was alive and conscious when he received the multiple stab wounds and that he lived at least several minutes before he died from these wounds or that the aggravators would not have been established or the mitigators would have outweighed the aggravators in this case.
 

 In this case, there is nothing in the record to show that the prosecutor attempted to argue HAC at the resentencing based on Dr. Wright’s changed testimony. At the original trial, the trial court found the HAC and CCP aggravators, despite the fact that Dr. Wright was not specific as to how long Mr. Pope lived after the attack. On appeal, this Court affirmed these findings.
 
 Duest,
 
 462 So.2d at 449-50. Additionally, as this Court found on Duest’s direct appeal from his resentencing, Dr. Wright’s resentencing testimony does not negate a finding of the HAC aggravator or an instruction on the CCP aggravator.
 
 See Duest,
 
 855 So.2d at 45-47.
 
 [11]
 
 In neither of its affirmances did this Court rely on a specific time estimate in Dr. Wright’s testimony to find that competent, substantial evidence supported the HAC or CCP aggravators.
 
 [12]
 
 We evaluate prejudice by
 
 *744
 
 determining whether our confidence in the outcome of the penalty phase is undermined, which includes evaluating the probable effect of any ineffective assistance error on the jury’s recommendation. In this case, based on our analysis of the role Dr. Wright’s testimony played, there is no basis to conclude that his resentencing testimony affected the finding of the HAC aggravator or the jury’s ultimate death recommendation. For all the reasons stated, our confidence in the outcome is not undermined and we uphold the trial court’s denial of this claim.
 

 Finally, we address Duest’s argument that he is entitled to a new guilt and penalty phase based on the State’s failure to disclose that Dr. Wright had significantly changed his testimony. This claim is also without merit. Under the United States Supreme Court decision in
 
 Brady,
 
 the State is required to disclose material information within its possession or control that tends to negate the guilt of the defendant.
 
 Mordenti v. State,
 
 894 So.2d 161, 168 (Fla.2004). To establish a
 
 Brady
 
 violation, the defendant has the burden to show (1) that favorable evidence — either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced.
 
 Strickler v. Greene,
 
 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999);
 
 see also Way v. State,
 
 760 So.2d 903, 910 (Fla.2000). To meet the materiality prong, the defendant must demonstrate a reasonable probability that had the suppressed evidence been disclosed the jury would have reached a different verdict.
 
 Strickler,
 
 527 U.S. at 289, 119 S.Ct. 1936. As with prejudice under
 
 Strickland,
 
 materiality under
 
 Brady
 
 requires a probability sufficient to undermine confidence in the outcome.
 
 See Way,
 
 760 So.2d at 913;
 
 see also Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936;
 
 United States v. Bagley,
 
 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (expressly applying the
 
 Strickland
 
 standard of “reasonable probability” to
 
 Brady
 
 cases).
 

 
 *745
 
 We do not reach the issue of materiality because Duest has not established that evidence of Dr. Wright’s changed testimony was suppressed by the State.
 
 [13]
 
 As to the guilt phase, there was no evidence presented to suggest that Dr. Wright changed his opinion before the end of the guilt phase and that the State was aware of the change before Duest was convicted. Duest’s claim also fails as it relates to his resentencing because Duest became aware of the new testimony during Dr. Wright’s cross-examination before the resentencing had concluded.
 
 See Doorbal v. State,
 
 983 So.2d 464, 480 (Fla.2008) (finding that defendant failed to establish that the State suppressed evidence where impeaching evidence had been referred to during a pretrial hearing and was brought out on witness cross-examination). Thus, Duest’s allegation of a
 
 Brady
 
 violation by the State is without merit.
 

 Brady Claims Summarily Denied
 

 In addition to his claim of error regarding Dr. Wright’s testimony, Duest argues that the court erred in summarily denying his remaining
 
 Brady
 
 claims. An evidentiary hearing must be held whenever the movant makes a facially sufficient claim that requires a factual determination.
 
 See Amendments to Fla. Rules ofCrim. Pro. 3.851, 3.852, and 3.993,
 
 772 So.2d 488, 491 n. 2 (Fla.2000) (endorsing the proposition that “an evidentiary hearing is mandated on initial motions which assert ... legally cognizable claims which allege an ultimate factual basis”);
 
 see also
 
 Fla. R.Crim. P. 3.851(f)(5)(A)(i) (providing that, on initial motions, an evi-dentiary hearing is required “on claims listed by the defendant as requiring a factual determination”). On an initial rule 3.851 motion, to the extent there is any question as to whether the movant has made a facially sufficient claim requiring a factual determination, the trial court must presume that an evidentiary hearing is required.
 
 See Amendments,
 
 772 So.2d at 492 n. 2 (stating that adoption of provision addressing evidentiary hearings is consistent with Court’s endorsement of a presumption in favor of evidentiary hearings on initial postconviction motions raising factually based claims). Moreover, when reviewing the summary denial of an initial rule 3.851 postconviction motion, this Court must accept the movant’s factual allegations as true.
 
 See Rose v. State,
 
 985 So.2d 500, 505 (Fla.2008). However, “postconviction claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record.”
 
 Owen v. State,
 
 986 So.2d 534, 543 (Fla. 2008) (quoting
 
 Connor v. State,
 
 979 So.2d 852, 868 (Fla.2007)). After a review of the record in this case, we conclude that the trial court was proper in its summary denial of Duest’s remaining claims asserting a
 
 Brady
 
 violation.
 

 First, Duest contends that the State withheld from the defense an exculpatory memorandum written by Assistant State Attorney Richard Garfield, the prosecutor for Duest’s initial trial. In the memo, Garfield stated, “The case is borderline on sufficiency of evidence, which is totally circumstantial.” The trial court denied this claim, agreeing with the State’s argument that the “statement at issue was the opinion of an attorney, and therefore
 
 *746
 
 not discoverable. It was privileged and therefore not
 
 Brady
 
 material.... ”
 

 We agree with the trial court’s findings. The prosecutor’s views on the strength of the case were no more than that: the prosecutor’s views on the strength of the evidence. Unlike
 
 Young v. State,
 
 739 So.2d 553, 556 (Fla.1999), which involved notes from the State Attorney’s Office regarding interviews with key witnesses and thus were held to constitute
 
 Brady
 
 material,
 
 id.
 
 at 559, the prosecutor’s statement in this case is pure opinion. The statement is neither admissible nor leads to the discovery of admissible evidence; therefore, it does not constitute exculpatory evidence under
 
 Brady
 
 and does not change this Court’s finding that there was sufficient circumstantial evidence to support Duest’s premeditated murder conviction.
 
 See Duest,
 
 462 So.2d at 449. Because this evidence was not exculpatory or admissible, this claim is not one which requires a factual determination, and we conclude that the trial court did not err in summarily denying this claim.
 

 In his final
 
 Brady
 
 claim, Duest alleges that the State withheld the results of a polygraph that had been administered to Mr. Shifflett, a witness for the State and the victim’s roommate. In the instant postconviction proceedings, the State turned over to the defense a notebook from law enforcement officers investigating the death of Mr. Pope and any involvement by Duest. The notebook included a handwritten note that stated: “2-16-82, 5 PM, Polygraph by Raoul Vincel, Passed.” The State also disclosed an investigative continuation report that stated:
 

 At 5:00 p.m., Februrary [sic] 16th, 1982, David Shifflett was given a polygraph test by Rauel [sic] Vincel, of the Bro-ward Sheriffs Office Polygraph Unit, at the Lauderhill Substation. At the conclusion of the test, this writer was advised by Deputy Vincel that there was no indication[
 
 14
 
 ] in the polygraph administered including the key questions whether or not [unintelligible] Shifflett participated in, set up, or actually murdered the deceased, John Pope.
 

 Duest asserts that the handwritten notes in the notebook together with the investigative report indicates that Mr. Shifflett was administered a polygraph examination during the investigation. In addition, Duest alleges that the State withheld the polygraph results of other witnesses. Duest now requests that the State disclose the identity of all witnesses subjected to polygraph examinations, the results of the examinations, and the polygraph reports, including all witness statements given prior to and during the examination. The trial court summarily denied this claim, finding that Duest had failed to establish any of the requirements for a
 
 Brady
 
 violation. We agree.
 

 We recognize that polygraph evidence is generally inadmissible, but the issue we focus on for purposes of determining a
 
 Brady
 
 violation is whether the evidence would lead to admissible substantive or impeachment evidence.
 
 See Rogers v. State,
 
 782 So.2d 373, 383 n. 11 (Fla. 2001). In
 
 Rivera v. State,
 
 995 So.2d 191 (Fla.2008), this Court held that a trial court erred in summarily denying the defendant’s
 
 Brady
 
 claim and ineffective assistance claim, which were based in part on the State’s failure to disclose or counsel’s failure to uncover that a State’s witness had lied in polygraph examinations in other cases.
 
 Id.
 
 at 195.
 

 In contrast to
 
 Rivera,
 
 in this case the polygraph report does not even indicate
 
 *747
 
 that witness Shifflett made contradictory statements during his exam. Rather, the conclusion from the polygraph was that Mr. Shifflett was truthful as to his lack of involvement in the crime. Based on the information contained in the investigative report about Mr. Shifflett’s polygraph examination, Duest
 
 cannot
 
 establish that the polygraph reports are exculpatory as to his involvement in the killing of Mr. Pope. Moreover, Duest
 
 has not
 
 alleged that any of the other polygraph reports or witness statements taken at the time of the examination are exculpatory or impeaching. Accordingly, the trial court did not err in its summary denial of this claim.
 
 [15]
 

 Summary Denial of Ineffective Assistance of Counsel Claims
 

 In his next claim on appeal, Duest argues that the trial court erred in summarily denying his claim of ineffective assistance of counsel, in which he asserted that counsel’s failure to present several witnesses to the jury at resentencing constituted deficient performance that resulted in prejudice. Duest asserts counsel’s failure to present the witnesses was due to counsel’s inadequate preparation for the resentencing.
 

 As stated previously, an evidentiary hearing must be held on an initial rule 3.851 motion whenever the movant makes a facially sufficient claim that requires a factual determination.
 
 See Amendments,
 
 772 So.2d at 491 n. 2. This Court determines the facial sufficiency of an ineffective assistance of counsel claim by applying
 
 Strickland’s
 
 two-pronged test of deficiency and prejudice.
 
 Spera v. State,
 
 971 So.2d 754, 758 (Fla.2007). However, we need not resolve the issue of deficient performance because we conclude that prejudice cannot be demonstrated.
 
 See Whitfield v. State,
 
 923 So.2d 375, 384 (Fla.2005) (“[Bjecause the
 
 Strickland
 
 standard requires establishment of both [the deficient performance and prejudice] prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong.”) (quoting
 
 Stewart v. State,
 
 801 So.2d 59, 65 (Fla.2001)).
 

 In reaching this conclusion, we have reviewed the record to determine if there is any need for factual development as to Duest’s claim of prejudice. According to the record, counsel urged the trial court to set a certain date for the resentencing because he had “eighteen witnesses coming in from Massachusetts.” He again stated on June 29, 1998, while the court was considering a trial date, that he needed time to bring in his out-of-state witnesses. Subsequently, the court set September 28, 1998, as the resentencing trial date. However, the trial was postponed by one week due to a hurricane. On October 2,1998, the court heard Duest’s motion for a continuance
 
 [16]
 
 where counsel stated to the court that several out-of-state witnesses would be unavailable to testify at the resentencing. The court also heard from Duest, who stated that twelve out of twenty-six witnesses indicated that they would not be able to attend the proceeding because the trial had been delayed. The court denied the motion, but ruled that the
 
 *748
 
 unavailable witnesses could testify at any subsequent
 
 Spencer
 

 [17]
 

 hearing. Subsequently, at the resentencing, counsel presented the testimony of eleven witnesses who testified about Duest’s difficult background and upbringing and his good qualities. After the jury recommended a sentence of death, the court held a
 
 Spencer
 
 hearing, at which counsel presented the testimony of seven additional witnesses through videotaped depositions.
 

 Even assuming an evidentiary hearing should have been held to explore what actions counsel took to prepare for the penalty phase and then for the unanticipated change of trial schedule due to the hurricane, we conclude that the record conclusively refutes any prejudice. Many cases assessing an ineffective assistance claim arising from counsel’s failure to present additional mitigation at trial compared the testimony from trial with the testimony presented at the evidentiary hearing.
 
 See, e.g., Jones v. State,
 
 949 So.2d 1021, 1036 (Fla.2006);
 
 Duckett v. State,
 
 918 So.2d 224, 236 (Fla.2005). This case differs from those cases in that Duest is comparing the testimony presented before the jury at the penalty phase with the testimony presented at the
 
 Spencer
 
 hearing. Further, the additional witnesses presented at the
 
 Spencer
 
 hearing were lay witnesses as opposed to the mental health expert and lay witnesses presented by Duest at the penalty phase. In this regard, this case is in marked contrast to
 
 Williams v. State,
 
 987 So.2d 1 (Fla.2008), where this Court concluded that ineffective assistance of counsel had been demonstrated because defense counsel failed to present any mental health expert to the jury and the mental health evidence outlined substantial evidence of mitigation that would have supported the jury’s life recommendation and prevented the trial judge’s override.
 
 See id.
 
 at 11-14.
 

 At the penalty phase, counsel presented the testimony of Nancy and Richard Duest, Duest’s mother and father, Nancy Kerrigan, Duest’s sister, Clare Guzzetti, Duest’s cousin, Joseph Duveau, a childhood friend, and Maria Craig, a pen pal, as well as the testimony of John Boone, an expert in corrections, Michael Lynch, a Broward County Sheriffs Corrections Officer, John Gelosi, a Broward County Jail employee, Robert Huber, an employee at the Wooden Rogers Education Center, and expert testimony from Dr. Patricia Fleming, a psychologist.
 

 Mr. Boone testified about the institutional abuse that existed while Duest was imprisoned at Walpole State Prison. Mr. Gelosi stated that Duest had assisted him in translating sign language. Mr. Huber testified that Duest was a gifted artist. Mr. Lynch testified that Duest had saved his life by warning him that another inmate had planned to kill him and escape. Dr. Fleming testified that Duest was abused as a child, became addicted to drugs, and was extremely affected by his first incarceration.
 

 As to the testimony from Duest’s family and friends, Ms. Craig testified that she knew Duest as her father and would talk to him about her family problems. Ms. Guzzetti testified that Duest was abused by his father and later converted to Christianity. Duest’s mother, Mrs. Duest, Mr. Deaveau and Ms. Kerrigan testified that Duest had been abused by his father and the father admitted to the abuse. Finally, Mr. Deaveau and Ms. Kerrigan testified that Duest had a drug abuse problem.
 

 At the
 
 Spencer
 
 hearing, Mr. Llórente presented the videotaped depositions of seven witnesses — Deborah Lavanche,
 
 *749
 
 Duest’s sister, Paul Duest, Jr., Duest’s brother, Edward Lavanche, Duest’s friend, Lillian Duest, Duest’s sister-in-law, and Duest’s nieces, Jennifer Duest, Darlene Duest, and Leighanne Duest. Ms. Le-vanche testified about Duest’s abusive childhood, his drug addiction and his artwork. Paul Duest, Jr., testified that his family loved Duest and that Duest was good to his children and a great artist. Mr. Lavanche and Lillian Duest also testified that Duest was a gifted artist. Lillian further testified that the communication Duest had with her daughters was positive. Jennifer Duest stated that Duest gave her good advice about school. Darlene Duest also testified that Duest would give her good advice. Finally, Leighanne Duest testified that she would communicate with Duest.
 

 The common theme throughout the testimony presented at the resentencing was Duest’s troubled background, his artistic talent, and his good nature. More importantly, in considering whether the testimony is truly cumulative, we consider which witnesses were presented to the jury versus the witnesses presented only to the judge. In this case, there was both strong mental health testimony presented to the jury and testimony from those who knew Duest well. Importantly, the trial court found that the most notable testimony confirming the abuse Duest suffered by his father came from Duest’s sister, Ms. Ker-rigan, whose testimony was presented to the jury.
 

 At most, the testimony from these additional witnesses would support nonstatuto-ry mitigation such as (1) physically and emotionally abusive childhood; (2) childhood traumatization and deprivation of love; (B) history of drug and alcohol abuse; and (4) artistic ability. Because the additional evidence presented at the
 
 Spencer
 
 hearing mirrored the lay testimony at the earlier resentencing, it was merely cumulative to the lay testimony presented before the jury. Accordingly, we conclude as a matter of law that Duest cannot demonstrate prejudice under
 
 Strickland
 
 such that the failure to present the witnesses at the penalty phase would undermine our confidence in the outcome of these proceedings, especially in light of .the three aggravators found. For all of these reasons, we affirm the summary denial of Duest’s ineffective assistance claim as to counsel’s presentation of mitigation at the resentencing.
 

 Finally, Duest asserts that the trial court erred in denying his ineffective assistance claim regarding mental health expert testimony as procedurally barred. In his postconviction motion, Duest argued that counsel was ineffective by presenting the testimony of Dr. Patricia Fleming, a psychologist, during his resentencing. This mental health testimony, Duest alleges, was insignificant and allowed for Duest’s prior criminal history to be introduced. We agree that the trial court improperly denied this ineffective assistance claim as procedurally barred, but conclude that no reversible error occurred because summary denial was otherwise proper.
 

 As part of his mitigation presentation at the resentencing, Duest presented Dr. Fleming. Upon cross-examination and over the objection of defense counsel, Dr. Fleming testified that she had reviewed Duest’s criminal history in formulating her opinion of Duest. She then listed the crimes in his criminal history, which included larceny, breaking and entering of a building during the daytime and nighttime, firearm possession, and breaking and entering with intent to commit a felony. On direct appeal, this Court held that the trial court did not err in allowing the State to elicit testimony from Dr. Fleming identifying Duest’s past crimes after she testified
 
 *750
 
 that she had considered his convictions in arriving at her opinions.
 
 Duest,
 
 855 So.2d at 49 (citing
 
 Johnson v. State,
 
 608 So.2d 4, 10-11 (Fla.1992) and § 90.705(1), Fla. Stat.).
 

 In its order on the case management conference, the trial court ruled that Duest’s claim regarding Dr. Fleming’s testimony was procedurally barred because it had been raised and rejected on direct appeal and thus summarily denied the claim. This conclusion was incorrect. As this Court stated in
 
 Bnmo v. State,
 
 807 So.2d 55 (Fla.2001):
 

 Whereas the main question on direct appeal is whether the trial court erred, the main question in a
 
 Strickland
 
 claim is whether trial counsel was ineffective. Both claims may arise from the same underlying facts, but the claims themselves are distinct and — of necessity— have different remedies: A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion, and a claim of ineffectiveness generally can be raised in a rule 3.850 motion but not on direct appeal. A defendant thus has little choice: As a rule, he or she can only raise an ineffectiveness claim via a rule 3.850 motion, even if the same underlying facts also supported, or could have supported, a claim of error on direct appeal.
 

 Id.
 
 at 63 (footnotes and emphasis omitted).
 

 Notwithstanding the trial court’s error in finding a procedural bar, Duest’s ineffective assistance claim was still properly denied without an evidentiary hearing. Although we take issue with Duest’s assertion that Dr. Fleming’s mental health testimony was insignificant, we also determine that no prejudice can be demonstrated because in the absence of Dr. Fleming’s testimony, the jury still would have been aware of Duest’s prior criminal history. First, the State indicated in its opening statement at the resentencing that it would present evidence that Duest had been previously convicted of other violent felonies. These prior violent felonies were armed robbery and escape with a weapon. Compared to these violent felonies, the crimes briefly brought out during Dr. Fleming’s cross-examination consisted only of the less severe offenses of larceny, burglary, and firearm possession.
 

 Second, the defense presented testimony from Mr. Boone, the corrections expert and Commissioner of Corrections for Massachusetts while Duest was incarcerated, who testified concerning the dangerous conditions that existed at Walpole when Duest was transferred to the maximum security unit at age nineteen. Based on this testimony and the evidence of the prior violent felonies, the jury had before it evidence of Duest’s previous criminal activity, irrespective of any testimony from Dr. Fleming. Because Duest’s criminal history became apparent at the resentenc-ing through other testimony and evidence presented at the proceeding, and because the cross-examination of Dr. Fleming on the criminal history was brief, Duest would be unable to demonstrate prejudice. Accordingly, we affirm the trial court’s summary denial of this aspect of Duest’s ineffective assistance claim.
 
 [18]
 

 CONCLUSION
 

 For the reasons explained above, we affirm the trial court’s denial of Duest’s motion for postconviction relief.
 

 It is so ordered.
 

 
 *751
 
 QUINCE, C.J., and WELLS, PARIENTE, LEWIS, CANADY, and POLSTON, JJ., concur.
 

 LABARGA, J., did not participate.
 

 [1]
 

 . Because the order concerns postconviction relief from a capital conviction for which a sentence of death was imposed, this Court has mandatory jurisdiction of the appeal under article V, section 3(b)(1), of the Florida Constitution.
 

 [2]
 

 . Our opinion on direct appeal from the re-sentencing explains this part of the procedural history.
 
 See Duest v. State,
 
 855 So.2d 33, 38 n. 2 (Fla.2003).
 

 [3]
 

 .The trial court found three aggravating factors: (1) the murder was committed in the course of a robbery or for pecuniary gain; (2) Duest was previously convicted of a crime of violence; and (3) the murder was especially heinous, atrocious, or cruel (HAC).
 
 Duest,
 
 855 So.2d at 38. The court found no statuto-
 
 *738
 
 iy mitigation and the following twelve non-statutory mitigators:
 

 (1) physically and emotionally abusive childhood (great weight), (2) childhood traumatization and deprivation of love (great weight), (3) history of drug and alcohol abuse (some weight), (4) defendant was under influence of drugs or alcohol at time of crime (some weight), (5) institutional abuse and corruption in the Massachusetts prison system, which Duest entered at age 17 (some weight), (6) influence by peer group, particularly a cousin, to commit crimes (some weight), (7) defendant’s diagnosis with lymphoma (some weight), (8) mutual care and love with friends and family (little weight), (9) willingness and ability to rehabilitate (little weight), (10) artistic ability (little weight), (11) lack of intent to kill victim, who was alive when defendant left residence and could have called for help (very little weight), and (12) defendant treated unfavorably by others and had troubled childhood (very little weight).
 

 Id.
 
 at 38 n. 3.
 

 [4]
 

 . In his second direct appeal, Duest argued: (1) The testimony of the medical examiner in the resentencing constitutes undisclosed evidence that calls into doubt the reliability of the verdict at trial; (2) the denial of a defense motion to have the State disclose criminal records of out-of-state witnesses deprived him of due process; (3) the trial court’s exclusion of evidence regarding Duest’s alibi deprived him of his rights to confrontation and to present a defense; (4) the trial court erroneously excluded evidence and denied an instruction on residual doubt of guilt; (5) the trial court erroneously instructed the jury on the cold, calculated and premeditated aggravator and erroneously denied instructions on two mental mitigating circumstances; (6) the trial court erroneously precluded a defense mental health expert from testifying that mental mitigating factors were present; (7) the trial court erred in permitting the State to elicit testimony identifying Duest's prior convictions from the defense mental health expert; (8) the trial court erred in giving the jury recommendation great weight; (9) the trial court erroneously found that the killing was especially heinous, atrocious, or cruel, and erroneously refused to find two mental health mitigators; (10) the death sentence is unconstitutionally disproportionate; and (11) the death sentence violates the Sixth Amendment right to a trial by juiy.
 

 Duest,
 
 855 So.2d at 39 n. 4.
 

 [5]
 

 . Duest’s claims were: (1) Duest should be permitted to amend his motion after the court’s in-camera inspection of public records exempted from disclosure by the State Attorney's Office; (2) the State failed to disclose information pursuant to
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) Duest was deprived of his right to a reliable adversarial testing at the guilt phase, his right to due process under the Fourteenth Amendment and his rights under the Fifth, Sixth, and Eighth Amendments because the State failed to disclose material exculpatory evidence or presented misleading evidence or both; further, newly discovered evidence entitles him to a new guilt phase; (4) Duest was denied a reliable adversarial testing at his resentencing in violation of the Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution; and (5)
 
 Ring
 
 v.
 
 Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), establishes that the State was precluded from using Duest's prior conviction as an aggravating circumstance because the conviction did not exist at the time of the offense.
 

 [6]
 

 . These issues are: (1) whether Duest was denied a reliable adversarial testing at the guilt and resentencing phases of his trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution and whether the trial court erred in summarily denying various issues attendant to this claim, and (2) whether Duest was denied a reliable adversarial testing at his resentencing in violation of the Sixth, Eighth and Fourteenth Amendments and whether the trial court erred in summarily denying this claim without an evidentiary hearing.
 

 [7]
 

 . Dr. Wright also changed his testimony concerning where the victim was attacked. We note that in our 2003 opinion from Duest's direct appeal of his resentencing, we made the following observation:
 

 In his 1983 testimony at deposition and trial in this case, Dr. Wright testified that the victim was initially attacked both on his bed and in the bathroom, and died soon after a final blow in the bathroom, and that death would have occurred from ten to fifteen seconds to no more than five minutes after the stab wound to the right side of the heart. After reviewing the evidence, including crime-scene photographs, Dr. Wright testified in the 1998 penalty phase that the evidence showed that the stab wounds were inflicted only in the bedroom and that the victim then made his way to the bathroom, where he collapsed and died.
 

 Duest,
 
 855 So.2d at 39. Upon another review of Dr. Wright’s testimony from his deposition, the initial trial and the resentencing, we conclude that Dr. Wright never clearly stated where the attack occurred.
 

 [8]
 

 . Although Duest argues he was restricted in what testimony he could present related to Dr. Wright at the evidentiary hearing, we have independently reviewed the trial court’s order and conclude that nothing limited the scope of the hearing regarding Dr. Wright only to issues related to counsel's alleged ineffective assistance as opposed to the broader issue of a
 
 Brady
 
 violation.
 

 [9]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla. 1971).
 

 [10]
 

 . Duest argues on appeal that his trial counsel at resentencing was ineffective for failing to seek to vacate his conviction in light of Dr. Wright's changed testimony, entitling him to a new guilt phase trial. We reject this argument for the same reason we have determined that the trial court did not err in denying Duest's newly discovered evidence claim concerning Dr. Wright’s testimony, which presumably could have been raised in a motion for new trial by his trial counsel during resen-tencing.
 

 [11]
 

 . The trial court instructed the jury on the CCP aggravator but ultimately found that the aggravator was not proven beyond a reasonable doubt.
 
 See Duest,
 
 855 So.2d at 45. However, the court did find the HAC aggravator.
 
 Id.
 
 at 38.
 

 [12]
 

 . In concluding that the killing was CCP on Duest's initial direct appeal, the Court relied on the following findings from the trial court:
 

 
 *744
 
 Evidence adduced at trial indicated that defendant informed witness Demezio some two days prior to the murder that he brings homosexuals back to their apartments, beats them up, and takes their money or jewelry. Defendant on the day of the murder went to his temporary residence with the victim, went into the closet where De-mezio kept a dagger and left the residence with John Pope, Jr., the victim. The dagger was later discovered missing, and John Pope, Jr. was later discovered at his home, dead. His car and jewelry box were missing.
 

 Duest,
 
 462 So.2d at 449-50. In its conclusion that the killing was HAC, this Court stated "tire evidence presented at trial shows that the victim received eleven stab wounds, some of which were inflicted in the bedroom and some inflicted in the bathroom. The medical examiner's testimony revealed that the victim lived some few minutes before dying."
 
 Id.
 
 at 449. On direct appeal from resentencing, the Court noted that the number of stab wounds referenced in the initial direct appeal differed from the resentencing testimony that Mr. Pope had been stabbed twelve times.
 
 Duest,
 
 855 So.2d at 47 n. 11. Further, the Court stated, "HAC connotes an utter indifference to the victim's suffering, which we find supported by the record.”
 
 Id.
 
 at 47 (citation omitted). As to the CCP instruction, this Court stated:
 

 This Court approved the trial court finding of CCP in Duest's direct appeal from his judgment and sentence, on virtually the same evidence presented in his resentenc-ing hearing, specifically the prearranged plan to beat up and rob a gay man and Duest's act of returning to his temporary residence to obtain a knife while in the victim’s company. Dr. Wright's testimony in the new penalty phase, that Pope was attacked only in his bedroom, remained alive and conscious for at least fifteen minutes, and might have survived had he promptly sought treatment, does not warrant a different conclusion.
 

 Id.
 
 at 45 (citation omitted).
 

 [13]
 

 . Although we do not reach the issue of materiality, we do summarily reject Duest’s assertion that the change in Dr. Wright's testimony was exculpatory — the first prong of
 
 Brady.
 
 Duest argues that counsel could have raised a guilt-phase argument that the victim was stabbed in the course of a domestic dispute by his roommate, David Shifflett, as evidenced by the victim’s failure to get help after the attack. However, Duest has not pointed to any other evidence which implicates Mr. Shifflett as the killer.
 

 [14]
 

 . The word "deception” was handwritten in the report above the word "indication.”
 

 [15]
 

 . We further conclude, in light of our review of Duest’s
 
 Brady
 
 claims in this appeal and his prior collateral proceedings and the effect of Dr. Wright's testimony on both the guilt and penalty phases of Duest's trial, that the trial court did not err in failing to conduct a cumulative error analysis.
 
 See Israel v. State,
 
 985 So.2d 510, 520 (Fla.2008) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit.”).
 

 [16]
 

 . The motion requested a continuance to further investigate into mitigating evidence and "other grounds to be argued ore tenus.”
 

 [17]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla.1993).
 

 [18]
 

 . While we conclude that no reversible error has been demonstrated as to die summary denial, we also take this opportunity to urge trial courts not to take a piecemeal approach to evidentiary hearings. Once defense counsel was on the witness stand, it would have been relatively easy to inquire into his trial preparation regarding the Massachusetts witnesses and the decision to call Dr. Fleming.