PER CURIAM.
Johnny Hoskins, a prisoner under sentence of death, appeals from the denial of his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851. This Court has jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the circuit court’s order denying relief.
I. BACKGROUND
In October 1992, Hoskins raped and then gagged and bound Dorothy Berger, his eighty-year-old neighbor, in her home. After putting her in the trunk of her own car, Hoskins drove the car from Melbourne, Florida, to his parents’ home in Georgia. Upon arrival early in the morning the next day, Hoskins borrowed a shovel from his father and drove to a nearby area, where he strangled his victim to death before he buried her. Hoskins v. State, 702 So.2d 202, 203-04 (Fla.1997). When the victim was found, she was still gagged and bound, and her body evidenced that she had been beaten and suffered several blows to the head. Id. at 204. Hoskins was convicted of first-degree murder, burglary of a dwelling, sexual battery with physical force, kidnapping, and robbery. Id. at 203. The trial court vacated the first penalty phase and held a second, following which the court sentenced Hos-kins to death. On appeal, we affirmed the convictions and the sentences on all but the murder charge. Id. at 210. With regard to the death sentence for the first-degree murder, however, we remanded the case for the trial court to order a positron emission tomography (PET) scan of Hos-kins based on the testimony of Hoskins’ neuropsychologist during the penalty phase. Id. at 210-11. Subsequently, we vacated Hoskins’ death sentence and ordered that a new penalty phase be conducted. Hoskins v. State, 735 So.2d 1281, *253 1281 (Fla.1999). Following this third penalty phase, the circuit court again imposed a sentence of death upon determining that any of the three aggravating circumstances found outweighed the mitigation:
Following the new penalty phase proceeding, the jury recommended death by a vote of 11-1. By special interrogatories, the jury found three aggravating circumstances: (1) the capital felony was committed during the course of or in flight after committing the crimes of robbery, sexual battery, or kidnapping (vote of 12-0); (2) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest (vote of 12-0); and (3) the capital felony was especially heinous, atrocious, or cruel (HAC) (vote of 10-2). The trial court found the same aggravating circumstances had been proven beyond a reasonable doubt.
The trial court found the following mitigating circumstances: (1) the Defendant formed and maintained loving relationships with his family (little weight); (2) the Defendant was a father figure to his siblings (little weight); (3) the Defendant protected his mother from his father’s abuse (little weight); (4) low IQ (little weight); (5) low mental functional ability (little weight); (6) some abnormalities in the brain which may cause some impairment (little weight); (7) an impoverished and abusive background (some weight); (8) mental age equivalent (between fifteen and twenty-five) (little weight); (9) the Defendant helped support his family financially (little weight); (10) the Defendant had and cared for many pets (little weight); (11) no disciplinary problems in school (little weight); (12) the Defendant suffered from poor academic performance and left school at age sixteen to work to help his family (little weight); (13) the Defendant was not malingering (little weight); (14) the Defendant expressed remorse (little weight); (15) potential for rehabilitation and lack of future dangerousness (little weight); and (16) good jail conduct, including death row behavior (little weight). The trial court concluded that any one of the aggravating circumstances standing alone far outweighed all of the mitigating circumstances and resentenced Hoskins to death.
Hoskins v. State, 965 So.2d 1, 6-7 (Fla.2007) (emphasis added), cert. denied, 552 U.S. 1152, 128 S.Ct. 1112, 169 L.Ed.2d 827 (2008). We affirmed the sentence. Id. at 22.
Hoskins subsequently filed a motion for postconviction relief, largely alleging claims of ineffective assistance of counsel. After an evidentiary hearing, the circuit court denied relief. Hoskins now appeals from the denial of this motion.
II. CLAIMS ON APPEAL
In this appeal, Hoskins contends that defense counsel provided constitutionally ineffective assistance in the penalty phase. Specifically, Hoskins claims (A) that defense counsel failed to develop and present evidence that Hoskins suffered from intermittent explosive disorder; (B) that defense counsel failed to use a mitigation specialist; and (C) that defense counsel failed to present evidence of Hoskins’ drug abuse as mitigation. Hoskins then argues that the cumulative effect of these errors denied him the constitutional right to a fair trial. Before addressing these claims, we first set out the applicable standard of review.
Claims of ineffective assistance of counsel are reviewed under the two-pronged standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the burden falls on the defendant to identify specific acts or omissions that demon *254 strate counsel’s performance was unreasonable under prevailing professional norms. Duest v. State, 12 So.3d 734, 742 (Fla.2009). Counsel’s errors must be “so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Second, the defendant must prove that the deficient performance resulted in prejudice. Id. Thus, the defendant must demonstrate that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. “Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo.” Anderson v. State, 18 So.3d 501, 509 (Fla.2009). In reviewing a claim that counsel’s representation was ineffective based on a failure to investigate or present mitigating evidence, the Court requires the defendant to demonstrate that the deficient performance deprived the defendant of a reliable penalty phase proceeding. Henry v. State, 937 So.2d 563, 569 (Fla.2006); see Gaskin v. State, 737 So.2d 509, 516 n. 14 (Fla.1999) (“Prejudice, in the context of penalty phase errors, is shown where, absent the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different or the deficiencies substantially impair confidence in the outcome of the proceedings.”), receded, from in part on other grounds by Nelson v. State, 875 So.2d 579, 582-83 (Fla.2004).
A. Ineffective Assistance Regarding Intermittent Explosive Disorder
 Hoskins first contends that defense counsel was ineffective for failing to present evidence that Hoskins suffers from intermittent explosive disorder (IED), a mental illness defined by the American Psychiatric Association in its Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV-TR). He alleges that such evidence would have established that at the time of the murder, he was unable to conform his actions to the requirements of law and was under the influence of an extreme mental or emotional disturbance — the two statutory mental health mitigators. See § 921.141(6)(b), (f), Fla. Stat. (2004). Accordingly, Hoskins claims that had counsel found and presented evidence that he has IED, the balance of mitigation would outweigh the aggravating factors.
At the third penalty phase, three experts testified that Hoskins had a frontal lobe impairment and that as a result Hos-kins had difficulty controlling his impulses and exercised poor judgment. First, Dr. Harry Krop, a neuropsychologist, testified for Hoskins at all three penalty phase proceedings. Dr. Krop based his opinion on his several interviews and testing of Hoskins conducted between 1993 and 2003 and his review of police reports, school records, and other information. He determined that Hoskins had an IQ of 84, which is low average. Dr. Krop opined that a frontal lobe impairment negatively affected Hoskins’ executive functioning and caused him to react impulsively. As a result, in emotionally charged situations, Hoskins would have difficulty reining in or controlling his behavior. With regard to the sexual battery of Ms. Berger in her home, Dr. Krop testified that Hoskins, who was already angry with his girlfriend, reacted violently to his victim’s frustration with his *255 continued presence in her home and a comment that she made to him. The expert concluded that this “rage reaction” was “consistent with frontal lobe impairment.” Dr. Krop opined, however, that Hoskins’ subsequent actions required planning and reflected Hoskins’ consciousness of wrongdoing and his effort to avoid arrest and cover up the crime. Hoskins, 965 So.2d at 17. Dr. Frank Wood and Dr. Joseph Wu, both of whom were neurologists, examined Hoskins’ PET scan. They concurred with Dr. Krop that Hoskins had a frontal lobe impairment that negatively impacted Hoskins’ impulse control and judgment. The trial court concluded that although Hoskins had a brain impairment that reduced his control over impulsive behavior, the evidence did not support a finding of either statutory mitigator. On appeal, we affirmed. Id. at 16-18.
In his motion for postconviction relief, Hoskins urged that in the third penalty phase, defense counsel should have found an expert to testify that Hoskins suffers from IED. At the postconviction eviden-tiary hearing, Dr. Hyman Eisenstein, a neuropsychologist, testified based on his testing of Hoskins and review of the other experts’ work, that Hoskins’ frontal lobe impairment was severe and that Hoskins met the criteria for IED, a mental disorder defined in DSM-IV-TR. Specifically, he stated that the condition is characterized by disproportionately aggressive reaction to precipitating stressors and cited examples from Hoskins’ history, some of which Dr. Krop also cited in his diagnosis of Hoskins during the penalty phase. In contrast to Dr. Krop’s penalty phase testimony, however, Dr. Eisenstein opined that, as a result of IED, Hoskins’ actions were impulsive and uncontrollable from the time of the sexual battery through the time of the murder, some six hours later. The postconviction court denied Hoskins’ claim, and we affirm.
Hoskins has failed to establish either deficient performance or prejudice. In his postconviction motion, counsel does not challenge Dr. Krop’s expertise or testimony. Instead, Hoskins claims that because defense counsel knew Dr. Krop’s testimony would not support the statutory mental health mitigators, counsel should have obtained another expert to testify that Hos-kins has IED. In other words, Hoskins’ claim of deficiency is that counsel should have found a more favorable expert. But “[t]his Court has repeatedly held that counsel’s entire investigation and presentation will not be rendered deficient simply because a defendant has now found a more favorable expert.” Card v. State, 992 So.2d 810, 818 (Fla.2008); see Peede v. State, 955 So.2d 480, 494 (Fla.2007) (“The fact that Peede produced more favorable expert testimony at his evidentiary hearing is not reason enough to deem trial counsel ineffective.”); Gaskin v. State, 822 So.2d 1243, 1250 (Fla.2002) (“[Cjounsel’s reasonable mental health investigation is not rendered incompetent ‘merely because the defendant has now secured the testimony of a more favorable mental health expert.’ ” (quoting Asay v. State, 769 So.2d 974, 986 (Fla.2000))). Accordingly, Hos-kins has failed to establish a deficiency that meets the first prong of Strickland.
Hoskins’ conelusory claim of prejudice likewise fails, and our confidence in the outcome is not undermined. His experts in both the penalty phase and the postconviction hearing testified that Hos-kins suffered from brain damage that negatively affected his ability to exercise control in emotionally charged situations. The jury in the penalty phase, however, did not find such evidence sufficient to overcome the aggravation in the case. Moreover, the conclusions of Dr. Krop and Dr. Eisenstein are based on essentially the *256 same evidence and test results, and the difference in their conclusions is a matter only of degree. That is, Dr. Eisenstein characterized Hoskins’ condition as more severe and diagnosed IED. He also concluded that this condition was the overriding factor from the time of the sexual battery through the time of the murder. At the postconviction hearing, however, the State presented the expert testimony of Dr. Harry McClaren, who disagreed with this diagnosis and testified that IED was “rare.” The facts of the case further undermine the testimony that Hoskins was unable to control his behavior or to plan throughout the entire criminal episode. After binding and gagging the victim and putting her in the car trunk, Hoskins drove for approximately six hours, stopping on the way at a cousin’s house to replace a fuse in the car and later to buy gas. When Hoskins arrived at his destination, he spoke to his father and borrowed a shovel. Then he drove to a remote area, where he manually strangled the victim and buried her before returning to his parents’ home. Finally, in this case, the sentencing court found three aggravators: the capital crime (1) was committed during the course of or in flight after committing the crimes of robbery, sexual battery, or kidnapping; (2) was committed for the purpose of avoiding or preventing a lawful arrest; and (3) was heinous, atrocious, or cruel (HAC). The latter factor is considered one of the most serious aggravators. Douglas v. State, 878 So.2d 1246, 1262 (Fla.2004).
B. Mitigation Specialist and Substance Abuse
Hoskins contends that counsel provided constitutionally ineffective assistance by failing to use a mitigation expert and by failing to present evidence of substance abuse. Because these two claims are related, we address them together.
At the evidentiary hearing, Hoskins presented the testimony of Shirley Furtick, who was accepted as an expert in social work. She testified regarding her investigation into Hoskins’ background — family history, school and criminal history, and alcohol and drug abuse history. She testified that Hoskins and members of his family abused alcohol and drugs. In addition, she provided Hoskins’ prison disciplinary records to Dr. Eisenstein as related to the IED diagnosis.
Hoskins also presented the testimony of Dr. Alexander Morton, a psychopharma-cologist, who testified based on his interviews of Hoskins regarding drug abuse and his reviews of records and other clinicians’ reports in the case. According to Dr. Morton, Hoskins abused alcohol and marijuana by age twenty-one and later began using cocaine. Moreover, Hoskins reported to Dr. Morton that in the period of time when the crimes occurred he was using marijuana and cocaine daily. Accordingly, Dr. Morton concluded that at the time of the crime, Hoskins would have been impulsive, aggressive, anxious, and potentially violent. Dr. Morton did not discuss the facts of the crime with Hos-kins. He concluded, however, that although there were impulsive elements involved in the crimes, the entire criminal episode did not evidence a complete lack of impulse control.
We hold that the postconviction court correctly denied these related claims. First, to the extent Hoskins argues that counsel was deficient solely for failing to hire a mitigation specialist, the claim is conclusory. Failure to use an “expert” in mitigation investigation does not per se constitute ineffective assistance. Hoskins contends that the mitigation expert’s provision of Hoskins’ corrections records assisted Dr. Eisenstein in diagnos *257 ing Hoskins with IED. This claim presumes, however, that counsel was ineffective for failing to use Dr. Eisenstein in the penalty phase, and we have already held to the contrary. In addition, Hoskins’ disciplinary records were offered by defense counsel in mitigation during the penalty phase. The sentencing court in 2004 found, however, that these reports did not evidence that Hoskins suffered either a reduced ability to control impulsive behavior or an emotional disturbance. In fact, based on this and other evidence, the sentencing court rejected the extreme mental or emotional disturbance statutory miti-gator. See § 921.141(6)(b), Fla. Stat. In determining mitigation, however, the sentencing court did find that the disciplinary records demonstrated Hoskins’ good conduct in jail and relied in part on these records in finding that Hoskins showed a potential for rehabilitation and lack of future dangerousness. See Hoskins, 965 So.2d at 6.
Following the evidentiary hearing, the postconviction court acknowledged that Hoskins had identified mitigation evidence that was not presented in the penalty phase. The evidence of Hoskins’ history of alcohol and drug abuse was presented primarily through Ms. Furtick, Dr. Morton, and Dr. Eisenstein. As to this claim, however, we need not address the first prong of the Strickland test because Hoskins was not prejudiced by the failure to present such evidence. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052 (“Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.”); Kilgore v. State, 55 So.3d 487, 499 (Fla.2010) (“A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.” (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986))).
The evidence at the hearing showed that the effect of long-term substance abuse on Hoskins was that he was impulsive, aggressive, and potentially violent. While this evidence might have provided some mitigation, these are the same behaviors that Dr. Krop testified at the penalty phase resulted from Hoskins’ frontal lobe impairment. Moreover, Hoskins presented minimal evidence that he was under the influence of drugs at the time of the criminal episode, and Dr. Morton testified that although elements of the criminal episode were impulsive, the episode was not entirely impulsive. Moreover, Hoskins’ actions after the sexual battery reflect knowledge of guilt, planning, and the conscious decision to avoid arrest. The postconviction court correctly concluded that there is no reasonable probability that the presentation of Hoskins’ individual and familial history of substance abuse would alter the balance of the aggravating and mitigating factors in this case. See Gaskin v. State, 737 So.2d at 516 n. 14. Accordingly, our confidence in the proceedings is not undermined.
In his reply brief, Hoskins also argues that penalty phase counsel was ineffective for not properly preparing Dr. Krop to testify at the third penalty phase. Contrary to Hoskins’ representations, this argument was not raised in the initial brief filed here. Accordingly, the claim is barred. See Hall v. State, 823 So.2d 757, 763 (Fla.2002) (citing J.A.B. Enterprises v. Gibbons, 596 So.2d 1247, 1250 (Fla. 4th DCA 1992) (“[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief.”)). Moreover, the claim is concluso-ry and meritless.
*258 The record shows that although defense counsel discussed the case with Dr. Krop on several occasions before the penalty phase, counsel was unaware — until he talked to Dr. Krop on the morning of his testimony — that Dr. Krop met with and tested Hoskins again in 2003. The post-conviction court was correct in finding that although defense counsel should have known earlier about the 2008 testing, Hos-kins has not demonstrated that counsel provided ineffective assistance of counsel. When Dr. Krop commenced his testimony and cited the recent testing, the State objected. Dr. Krop proffered testimony about the testing results, and during a recess, the parties spoke informally. On direct examination, defense counsel subsequently questioned Dr. Krop about the latest testing and interview of Hoskins, and Dr. Krop testified that none of the new information altered his opinion that Hoskins had a frontal lobe impairment that resulted in Hoskins acting impulsively and exercising poor judgment in emotionally charged situations. Accordingly, Hos-kins was not prejudiced by counsel having been unaware of the 2003 testing until shortly before Dr. Krop’s testimony.
C. Cumulative Error
Hoskins alleges that the cumulative effect of errors in this case warrants relief. Because each of his claims of error fails individually, however, he is entitled to no relief for cumulative error. Schoenwetter v. State, 46 So.3d 535, 553, 562 (Fla.2010).
III. CONCLUSION
For the reasons discussed above, we affirm the trial court’s order denying Hos-kins’ motion for postconviction relief.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.